1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

San Francisco Division

11

NEAL STROBEL,                                     Case No. 21-cv-01010-LB

12

            Plaintiff,

13

    v.                                            **ORDER DENYING EX PARTE
                                                  APPLICATION FOR LEAVE TO
14                                                SERVE THIRD-PARTY SUBPOENA**

GLEN JAMES LESNICK, et al.,

15

            Defendants.

16

17                                               **INTRODUCTION**

18         Plaintiff Neal Strobel sued thee named defendants (Glen Lesnick, Teresa Lesnick, and Joseph

19   Carr) and unknown defendants for conversion and related claims after they took almost $58,000 in

20   cryptocurrency that he invested through the website worldofcryptomining.com (WOCM). The

21   plaintiff traced the deposits to a Gemini wallet and a Coinbase wallet. Coinbase and Gemini are

22   companies that operate cryptocurrency exchange platforms.[1] He filed an application to subpoena

23   Coinbase and Gemini to determine the owners of the wallets.[2] The court can decide the matter

24   without oral argument. Civil L.R. 7-1(b). The court denies the motion without prejudice, primarily

25

26   _____

     [1] Compl. – ECF No. 1 at 3–14 (¶¶ 12–105); Strobel Decl. – ECF No. 1–3 at (¶¶ 2, 6–9). Appl. – ECF
27   No. 13 at 4. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the
     ECF-generated page numbers at the top of documents.

28   [2] Appl. – ECF No. 13.

ORDER – No. 21-cv-01010-LB

United States District Court
Northern District of California

because it is not certain that the court has personal jurisdiction over the defendants or that venue lies here.

## STATEMENT

The defendants are Glen Lesnick, Teresa Lesnick, Joseph Carr, and Doe defendants.[3] Glen Lesnick recruited the plaintiff to invest in WOCM. They met in person and exchanged messages through the WhatsApp messaging service, and Mr. Lesnick promised big returns and said that he had invested in WOCM too. Relying on the representations, on unspecified dates, the plaintiff transferred cryptocurrency (in total valued at almost $58,000) to a wallet "specified by WCOM." Only then did Mr. Lesnick tell him that he could lose his entire investment and that over 80 investors lost money too. At the promised rates of return (40 percent per month after an investment for 90 days), the value of the investment is approximately $335,000.[4]

The deposited cryptocurrency went first to the following deposit address for WOCM: 1GJBRdmoZAJWmMVCfe3J15S6BDEmttq7UQ. That address had over 250 transactions totaling 18.5 bitcoins (including Mr. Lesnick's claimed investment).[5] On December 11, 2019, the plaintiff's and Mr. Lesnick's deposits were moved within one minute of each other to a Bitpay address (5PLGLYf4zWzhgX9u2XBea4q3fBMV9X7dK). Bitpay processes payments for merchants. Then, WOCM sent the combined cryptocurrency to two wallets: one to a Gemini wallet (bclq2lr3yh012m6qwu77p29hs078sl3d42zyr6xv29) and the second to a Coinbase wallet (bc1qv8zq7lmwmz9cz0um2wzuju0l0lvmazfpryulta). WOCM also moved bitcoin through another Coinbase wallet (bc1qsa4uarulmvq2ftr3gfmndhyz8k6zkqkpe5j35r).[6]

On February 25, 2020, days before the plaintiff was supposed to receive the first return on his investment, Mr. Lesnick left the country for Africa and Switzerland to meet with the operator of the WOCM website. The plaintiff waited the requisite 90 days and never received a return on his investment. Mr. Lesnick, and his ex-wife Teresa, also made mortgage payments with WOCM

---

[3] Compl. – ECF No. 1 at 2–3 (¶¶ 4–11).

[4] *Id.* at 3–4 (¶¶ 12–19).

[5] *Id.* at 4 (¶ 19).

[6] *Id.* at 5 (¶ 24).

United States District Court
Northern District of California

1    funds shortly after the plaintiff's initial bitcoin deposit in December 2019. (The dates in the

2    complaint do not appear entirely consistent.[7])

3        After the plaintiff invested half of his investment, Mr. Lesnick began threatening him and

4    apparently did not respond to the plaintiff's question about where to find the website operator. Mr.

5    Mr. Lesnick also said that WOCM stole money from him in an SEC complaint that he filed in

6    May 2020. Shortly after May 2020, the WOCM website "was suspiciously shut down and the

7    plaintiff could no longer access the account." Mr. Lesnick has been involved with other marketing

8    scams, including Karatbar International and the Bitconnect Ponzi scheme. Teresa is "supposedly a

9    financial professional with Wealthwave.com . . . , [which] is owned by world financial group, a

10    known pyramid scheme."[8]

11        The other defendant is Joseph Carr, who allegedly sold the plaintiff a Forex Trading software

12    for $600 of bitcoin that was sent to the main wallet for WOCM.[9]

13        The claims in the complaint are against all defendants and are as follows: (1) conversion; (2)

14    violations of § 10(b) and Rule 10(b)(5) of the Securities Exchange Act of 1934; (3) fraud; (4)

15    breach of fiduciary duty; (5) negligence; (6) negligent misrepresentation; (7) breach of contract;

16    (8) unjust enrichment; and (9) civil conspiracy.[10]

17        According to the complaint, the plaintiff lives in Washington state.[11] Mr. Lesnick apparently

18    solicited the plaintiff at a "local bike shop," presumably in Washington state, but the complaint

19    does not specify the bike shop's location.[12] The civil cover sheet says that Mr. Lesnick resides in

20    Denver, Colorado.[13] The Statement of Charges by the Washington State Department of Financial

21    Institutions Securities Division — attached to the plaintiff's application for early discovery —

22

23    _____

24    [7] *Id.* at 4–5 (¶¶ 19–24, 26–27).

      [8] *Id.* at 5–6 (¶¶ 28–33).

25    [9] *Id.* at 5 (¶ 25).

26    [10] *Id.* at 6–14 (¶¶ 34–105).

27    [11] *Id.* at 2 (¶ 4).

      [12] *Id.* at 3 (¶ 12).

28    [13] Civil Cover Sheet to Compl. – ECF No. 2-1 at 1.

United States District Court
Northern District of California

states that WOCM has its principal place of business "purportedly in Zurich, Switzerland" and that

Lesnick "is a former Washington resident."[14] The plaintiff's recent application to serve the

defendants by publication identifies Mr. Lesnick's address in Colorado, Ms. Lesnick's address in

Colorado, and Mr. Carr's address in Rosemead, California, which is in the Central District of

California.[15] The plaintiff cannot identify the Doe defendants who absconded with his

cryptocurrency, despite having made several efforts to do so.[16] He filed a report with the FBI "to

attempt to locate and identify the[] Doe defendants, but that search has been unsuccessful to

date."[17] He has also been in contact with Coinbase "on numerous occasions in an attempt to obtain

the identifying information using the Wallet identification codes" but to date, Coinbase had not

provided the information.[18]

### GOVERNING LAW

A court may authorize early discovery before the Rule 26(f) conference for the parties' and

witnesses' convenience and in the interests of justice. Fed. R. Civ. P. 26(d). Courts within the

Ninth Circuit generally consider whether a plaintiff has shown "good cause" for early discovery.

*See*, *e.g.*, *IO Grp., Inc. v. Does 1–65*, No. 10-4377 SC, 2010 WL 4055667, at *2 (N.D. Cal. Oct.

15, 2010); *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–77 (N.D. Cal. 2002);

*Tex. Guaranteed Student Loan Corp. v. Dhindsa*, No. 1:10-cv-00335-LJO-SKO, 2010 WL

2353520, at *2 (E.D. Cal. June 9, 2010); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202

F.R.D. 612, 613–14 (D. Ariz. 2001) (collecting cases and standards). "Good cause may be found

where the need for expedited discovery, in consideration of the administration of justice,

outweighs the prejudice to the responding party." *Semitool*, 208 F.R.D. at 276.

In evaluating whether a plaintiff establishes good cause to learn the identity of a Doe

defendant through early discovery, courts examine whether the plaintiff: (1) identifies the Doe

---

[14] Statement of Charges, Ex. 3 to Appl. – ECF No. 13-1 at 11–12 (¶¶ 1, 3).

[15] Appl. – ECF No. 15.

[16] Notice Regarding Service of Defendants – ECF No. 11 at 2.

[17] Appl. – ECF No. 13 at 5; Strobel Decl. – ECF No. 14 at 3 (¶ 11); FBI Report, Ex. 1 to *id.* at 5.

[18] Strobel Decl. – ECF No. 14 at 3 (¶ 12); Emails with Coinbase, Ex 2 to *id.* at 11–16.

United States District Court
Northern District of California

defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the defendant, (3) demonstrates that the action can withstand a motion to dismiss, and (4) shows that the discovery is reasonably likely to lead to identifying information that will permit service of process. *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578–80 (N.D. Cal. 1999) (citations omitted). "'[W]here the identity of alleged defendants [is not] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.'" *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

## ANALYSIS

The main *seescandy* factor that is relevant to the discovery motion is demonstrating that the complaint can withstand a motion to dismiss. The plaintiff lives in Washington state, and at least some of the defendants used to live there and now live possibly in Colorado or in southern California. The alleged fraud apparently happened in Washington state. An issue is whether there is personal jurisdiction over the defendants or venue here.

"A civil action may be brought in — (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). If venue is improper, the court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

Again, there is no discernable nexus to this district. Moreover, it is not apparent that there is personal jurisdiction over the defendants. *JT Foxx Org. v. Palmer*, No. 17-CV-02661-DMR, 2017 WL 3617111, at *3 (N.D. Cal. Aug. 23, 2017) ("the first [*seescandy*] factor is necessary to ensure

1    that federal requirements of jurisdiction and justiciability can be satisfied") (cleaned up). Nothing

2    suggests general or specific personal jurisdiction over the defendants. *Bristol-Myers Squibb Co. v.*

3    *Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). There is no general jurisdiction because the

4    defendants are not domiciled here. *Id.* There is no specific jurisdiction in this tort case because —

5    at least on this record — nothing suggests that the non-resident defendants purposefully directed

6    their activities here or consummated some transaction with the forum or a resident here. *Picot v.*

7    *Weston*, 780 F.3d 1206, 1211 (9th Cir. Mar. 19, 2015); *Schwarzenegger v. Fred Martin Motor*

8    *Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (purposeful-direction test applies to tort claims). The

9    plaintiff has the burden of proving these two factors. *Picot*, 780 F.3d at 1211–12.

10       Given these issues, the court denies the application without prejudice to the plaintiff's

11    establishing that this is the right district for the lawsuit. If this is the wrong district, then the court

12    can transfer the case to the right district (presumably the Western or Eastern District of

13    Washington).

14       As to the request for service by publication, the court defers the issue pending clarification of

15    its jurisdiction. Assuming jurisdiction, service by publication seems appropriate. If the plaintiff

16    also has email addresses, the court suggests including that as a second form of alternative service.

17       Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual in the United

18    States using any method permitted by the law of the state in which the district court is located or in

19    which service is affected. Fed. R. Civ. P. 4(e)(1). California law allows for five basic methods of

20    service: (1) personal delivery to the party, *see* Cal. Civ. Proc. Code § 415.10; (2) delivery to

21    someone else at the party's usual residence or place of business with mailing after (known as

22    "substitute service"), *see id.* § 415.20; (3) service by mail with acknowledgment of receipt, *see id.*

23    § 415.30; (4) service on persons outside the state by certified or registered mail with a return

24    receipt requested, *see id.* § 415.40; and (5) service by publication, *see id.* § 415.50.

25       "While the California Code includes no explicit provision for service by email, it provides a

26    broad framework for alternative means of service: '[w]here no provision is made in this chapter or

27    other law for the service of summons, the court in which the action is pending may direct that

28    summons be served in a manner which is reasonably calculated to give actual notice to the party to

United States District Court
Northern District of California

be served.'" *Aevoe Corp. v. Pace*, No. C 11-3215 MEJ, 2011 WL 3904133, at *1 (N.D. Cal. Sept. 6, 2011) (quoting Cal. Civ. Proc. Code § 413.30). "Courts have construed Section 413.30 as authorizing service by email where email service 'is reasonably calculated to give actual notice to the party to be served.'" *Cisco Sys., Inc. v. Shaitor*, No. 18-cv-00480-LB, 2018 WL 3109398, at *3 (N.D. Cal. June 25, 2018); *Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *3 (N.D. Cal. Mar. 27, 2012); *Aevoe*, 2011 WL 3904133, at *1.

## CONCLUSION

In sum, the court denies the application for discovery without prejudice and postpones the service issue.

This disposes of ECF Nos. 13 and 15.

**IT IS SO ORDERED.**

Dated: August 13, 2021

_____
LAUREL BEELER
United States Magistrate Judge